Our next case, or I believe I should really say cases, number four, under the name United States against Shelton and the other defendants, and I understand that we will hear first from Mr. Hillis. Daniel Hillis May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Lewis, but I'll be arguing for him, Mr. Edwards, and Mr. Walker on the first point, since that's common to all three individuals. And that first point is what we regard as the erroneous application of four levels for the enhancement the judge gave, which we think is in contravention to application note 13D. I'll say specifically as to Mr. Lewis, the PSR said that the enhancement applied because the other felony was the sale of guns to a co-defendant who Mr. Lewis knew was going to sell the guns. That's paragraph 26 in the PSR. And, in fact, the judge's explanation at the sentencing hearing, pages 8 and 9 of Mr. Lewis's appendix, says that the judge is giving the enhancement because of the stolen weapons. That runs directly afoul of application note 13D, which says the enhancement applies only if an offense other than firearms possession and trafficking is at issue. Was Lewis involved in the burglary of the railroad? He was. Why isn't that sufficient? Well, the judge's finding is the first problem with that, Judge, the explanation. So if the judge makes a finding that he's imposing this because of the possession of the stolen weapons, that's the 13D problem. But I'll say also for the burglary, as an overarching principle, that's a problem if that were the reason for Mr. Lewis, Mr. Walker, for Mr. Edwards. Burglary is an offense that is completed once somebody enters with the intention to commit the felony or theft. So it's a completed offense. We've got application note 14B, which simply seems to indicate that burglary counts as an other felony offense if what you wind up taking, whether you intended originally to or not, is guns. Sure. So we've got two different problems, though. Maybe three. First of all, the judge makes explicit findings that he's imposing this enhancement to my client because of the stolen weapons. So it is because of that other offense, which is then a trafficking and possession offense. That's the 13D problem. We'd also have another problem for the judge to, under the same facts for all three individuals, to give a different explanation for why the enhancement and what offense it is applies for Mr. Lewis and characterize it still differently and it sort of evolves for the three different sentencings. That seems arbitrary and capricious to go ahead and explain the same facts in a way that an enhancement applies for one individual, not for the others, and back to the burglary. Under the Illinois burglary statute, if the offense is completed once the person enters the space with the intent to commit the felony or the theft, that burglary is complete. The conduct then occurs after. And there are cases where this court has said, look, in a bang-bang situation where, off the top of my head, there's United States v. Christopher Gates, somebody completes a drug transaction, and then there is a weapons sale that occurs after that. You don't get the enhancement because one is a completed offense and the other thing doesn't further the other conduct. But they go back. Maybe the first burglary wasn't, but they go back. There are burglaries that are not completed. True. That is true. We then, though, have, at the very least still, the narrow window that is present through this court's explication of viscara and the synthesis of the case law from the different circuits. And what happened in viscara was there's a very narrow opening where the court, inciting to Coldren, Stottero, De La Cruz-Suarez, Gallegos, says that when we have conduct that is accounted for in the other enhancements, we still have the possibility of double counting. Now, I'm not certain that the panel in that case meant to leave the door open for this argument. But the case law in the other circuit certainly supports this because we have enhancements that are going because they broke into a railroad car. They then stole the guns. They then trafficked the weapons. And it's all for the same conduct that is accounted for in the other enhancements to now give the four additional levels because when you broke into the car and committed the offense and took the contents, those weapons are also stolen, which is, of course, logically correct. But by way of additional harm and so forth, it's a non-feature. Why wouldn't we, if we were to agree with you, have to overrule both viscara and Cromwede? You don't have to overrule viscara because viscara allows for the possibility of double counting under the correct circumstances of the case law that it cited. And again, we recognize it's narrow. But if viscara said 100% we are closing the door on double counting, it would not use the term of limitation generally, which it did. And it cites the cases and it gives the logic. We are just asking the court to look at what the facts of this case are, apply them, look at what the relative harms are, assess them, and see if we don't have a double counting problem. We believe that we do. But when I looked at the facts of this case, the thing that really stood out was the role of the burglaries. Okay. And then that takes us back to the 2010 case, the Cromwede case. Sure. And all I can say is what separate harms are we accounting for through the imposition of the different enhancements such that they all apply and you need the four additional levels? What harm does that account for that's not already accounted for in the imposition of the other enhancements in the case? Let me try to answer your rhetorical question, okay, and see what's wrong with this. Okay. For the enhancement for possession of stolen guns, we know that applies whether you know the guns are stolen or not, right? That just applies to somebody who happens to be a felon in possession. You don't have to have stolen them. You don't have to know that they're stolen. Right. The trafficking enhancement would apply to somebody who, let's say, buys the stolen guns and intends to resell them further, right? So we've got both of those enhancements just without any burglary at all, without any theft, somebody who's just trafficking in stolen guns. And then you need the B6 enhancement for another felony offense, in this case, at least, the way the different charges are grouped, in order to account for these defendants' role in carrying out the burglaries, the break-in at the railroad. Those sound like three separate things to me. You get in to get the materials through the break-in, and then you gain possession immediately. I think with the felony that you're committing through exercising control of the firearms, that's the burglary. You've got that part. You've got the stolen weapons then and there. I'm not so concerned with the statutory differences among the different charges. Okay. When the charges are all grouped, we basically look, as I understand it, we look under the guidelines to see which offense features, in essence, are accounted for or not accounted for. And that's why I think it looks to me like this is an appropriate stacking. My point, I guess, would be, pivoting back to what Judge Wood was explaining, if the burglary is an ongoing offense, you go for the first bit, you come back for the second bit. Burglary is described as, with the intent to commit theft or felony or theft. The theft is the stolen weapons. This is a harm that's already accounted for, it seems to me, when they have stolen the weapons, and then you're getting an enhancement for another felony. And we are talking, again, about the same weapons that are now with the original purpose of getting into the boxcar and taking the guns and selling them to someone else. It seems to me as though the harms are largely accounted for, excuse me, entirely accounted for. Isn't that incidental, though? I mean, as far as I can tell from this record, these guys go down to the train yard, and they're just going to steal stuff from train cars that are there. They could have stolen cigarettes. They could have stolen TVs. They could have stolen whatever happened to be in those cars. As it happens, it was guns. But it's the burglary aspect of it that this Four Points is focusing on. Right, and so it seems implicit in the commission's setting up of this enhancement. They are particularly concerned about the harms that are attendant to burglary and the use of a firearm. Our clients were unarmed when they entered, and they obtained guns that were boxed and unloaded. Nobody had any ammunition. There's no particular harm that is posed by now the possession of these guns, which is almost, as you say, a judge happenstance. It could have been televisions. But doesn't that actually help the government more than it helps you? I mean, I agree with what you just said, actually. These were not guns they were going to whip out of the package and suddenly start shooting people with. Help them how? Because it's a distinct offense. I mean, the stealing of the guns is a stealing of a valuable thing. And so that factors into the advisory sentence. And I think the whole theory of Vizcarra, by the way, was to allocate properly what belongs to the sentencing guidelines and what belongs to 3553A. You can certainly make a lot of the arguments you're making at the latter stage. So as I understand the guidelines to be an effort to impose punishment based on harm, I'm still not sure then what the additional harm is when the theft is of the firearms that are unloaded, boxed, etc. That may be on the margins of what Vizcarra allows by possible double counting. But it's certainly a feature here and is unaccounted for, at least in the judge's analysis. The judge looked at the enhancements, rejected, and incidentally, I should point out, the government asserts that there's waiver, asserts that there's plain air. And in my recollection of the briefs, since if we're to get as far as this, we'd like the benefit of de novo review. The briefs show that for Mr. Walker, appendix pages 59 and 64, he preserved the issue. Mr. Edwards, page 9 of the government's brief, they agree that he preserved the issue. And for Mr. Lewis at appendix pages 8 and 9, he's arguing about this enhancement. And so I don't think the government can say anything about that issue, that it's not preserved. And since we're on the topic of waiver, if we can't win under the guidelines, and we've made an argument under Vizcarra, the government loves to trumpet waiver when it benefits them. We made an explicit argument under those cases. The government said nothing about any of those cases, did not discuss them, did not cite them. The nonchalant treatment of an issue, according to this court's case law, is the application of waiver. We think that if there's a waiver problem here that can be validly raised, we can raise it, not the government. And we would like this court to apply its waiver principle to benefit our clients, much like it would apply the waiver principle, if applicable, to benefit the government under any circumstances. Mr. Ellis, a couple of quick questions. With respect to Mr. Lewis, he got a below-guideline prison sentence, correct? He did. And he's complaining on appeal about the length of the supervised release term he got, correct? That is one issue, yes. That would seem to me, we've talked about this in other cases before, but in essence sort of the most dangerous case in order to argue about the length of a supervised release term, where a judge might say, if we send it back, well, if that's too much supervised release, maybe I need to rethink the prison term. I would think that's faulty thinking on the part of the district court judge, given the differences that imprisonment serves that are distinct from supervised release. The Supreme Court said so in Johnson. And furthermore, Judge, getting back in is an important aspect for purposes of presenting pepper arguments, things like that. If Mr. Lewis has anything that he can offer the judge to show that the aggregate amount of imprisonment can be reduced for any reason through his post-incarceration rehabilitation, or present some of these arguments that we're trying to make here in a better fashion to the district court, he's game for that. 180 months is a long time. It's a risk, but right now it's static. He's doing 180 months. He would like a chance to get that reduction, and we're going to go for every procedural vehicle that we can and make any argument that we can. And, as I may conclude, just with respect to the supervision, Armour has taken a fairly elastic view is how I described it in the brief. Your Honor? You're not questioning how extensive the 3553 factors were considered by the district court, are you? Not for the length of imprisonment. Pardon? Not for the length of imprisonment. I'm talking about the supervised release. For the supervised release, I am, Judge, because the specific findings and the things the judge was most focused on, he was attuned to the length of imprisonment. Those were the factors that drove his explanation. I don't think that when he gave the limited explanation that he did for supervision, we can discern from that why it should be one year versus three. I think that presents tension between the Henry case, which we cited in our brief, and the Armour case. And we are not here as supporters for the, I forgot how the one opinion put it, the Court Reporters Security Act, that judges need to say more, but they need to say more than this. So you don't think this satisfies Armour? I don't, Judge. I think even if it does, I should say this, there's still tension between Henry and Armour. And we think that Henry is a more fully explicated statement of what the findings need to be. Thank you. All right. Thank you, Mr. Hillis. That doesn't leave much for rebuttal, but we'll see. Mr. Slaughter? Yes. May it please the Court? My name is Wayne Slaughter, and I represent Andrew Shelton, defendant in this case. As you know, the trial court imposed a 2K2.1B6B enhancement on Mr. Shelton, which resulted in four points being added to his overall offense level. We believe that is impermissible double counting, and the reason why we believe that it's so is because, pursuant to Application No. 13D, it specifically says that if the guns were used or transferred in the course of another felony, then the B6B would then apply, which in my mind suggests that there's a prohibition against applying B6B for double counting if, in fact, there's no proof that the guns were used or transferred in the course of another felony, which is the case here. So you just said used or transferred. I understand that you might say these guns weren't used in the sense of shot, but they certainly were transferred and used to stock this store that sells hot goods. That's a use, isn't it? Not as a disposal of the burglary proceeds, so to speak. Well, it's my understanding that the guns were actually stored, that they were not transferred in the sense that they were not given in the course of another felony offense. They weren't used in the course of the burglary, and they weren't transferred in the course of another felony offense, and that's what I'm getting at. Now, were you going to say anything about criminal history? With respect to the criminal history, Judge, admittedly, that is a weak point. What the brief is trying to say is basically that because the interpretation of Mr. Shelton's revocation as to how it came about, there's no evidence that, in fact, the revocation resulted in an additional four-year sentence. So if we were to read the documents, though, as imposing four years as a penalty for the failure to comply with the terms of release, then you're out. I mean, then the time is within the countable time period. Can you repeat that? Well, if we were to understand the documents to show that he got four years for violating his parole, then, or probation, whatever, then you can count that earlier offense. If, in fact, you could read it that way. The way we read it is that there was a revocation of the probation, and we don't know exactly what extent the revocation of probation. Well, there are, like, these several burglaries, right? So he gets four years for something, right? He got four years for the burglary in 2000, Your Honor. We're saying the probation was revoked. It may have been terminated simultaneously with the actual imposition of a four-year sentence. But that is an interpretation, I think, that the court made based on the pre-sentence report that was done by the probation officer, and that was the interpretation that was made, and we disagree with that interpretation. I mean, the only evidence we have on this is the documents from the court, right? That's correct, and they are limited as to what they say. So do you think we have any duty to defer to the way the district court judge understood them? I think we have a duty. Well, I'll put it this way. I think the court has a duty to make sure that justice is done, and that will require that this case be sent back and reprimanded to the district court for further sentencing or for further investigation into the sentencing. Didn't the judge, though, say that this criminal history issue did not matter to his ultimate sentence? He did, Judge. But we have to look at that in light of the fact that he did use the sentencing guidelines to determine the actual sentence that was imposed in this case. And while many judges... I thought everybody got a below-guideline sentence. Did Shelton make an exception? I think his was right at the guideline sentence. I think what we have to look at is I understand that the courts are apt to say that the sentence would have been imposed even if they had not used the guidelines. But here it's clear that the court did use the guidelines in imposing the sentence. And had the four-level enhancement not been given, there would have been a different guideline sentence that would have been imposed. Can you help me with the chronology in the district court? Did the judge have everybody's guilty pleas before he sentenced anybody? I cannot speak to that, Judge, because I am not the lawyer who was there at the time. All right. Thank you very much. Thank you, Your Honor. Yes, Mr. Parenti. May it please the Court, my name is Chris Parenti and I represent the United States. Two things. First, every defendant did get a below-guideline sentence, including Mr. Shelton. By one month. I thought it was more significant than that, but I know that every defendant was sentenced below guidelines. Two, just to clarify one other thing. The district court was clear about this. Every defendant was sentenced below guidelines. Every defendant that received the enhancement for the other felony offense enhancement, it was premised on the burglary. Counsel said that Mr. Lewis' was not. It was. It's in the Appendix 9 of Mr. Lewis' brief, where the court said it's the possession of the firearm in connection with the commission of Mr. Lewis of another offense, namely stealing firearms off the train car. That's what the court used as the basis for the other felony offense. But the connection of the firearms is that they were the thing that was stolen. Correct. Not that they were in any way used, bartered, bashed over somebody's head. You know, nothing. Absolutely. They just happened to be the items in the boxes. Correct, which is why the court followed the Guidelines Comment 14b, which says that this enhancement is warranted in a case in which a defendant who during the course of a burglary finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary. So the court's point, and the government's point, was the guidelines tell us what to do in this situation. The comment specifically says if in a burglary you find a firearm and you possess it, even if you don't use it, it still counts. So the government's position here, Judge, is that each enhancement of the three that the court implied was based on a separate harm caused by the defendant's conduct in this case. And thus, all three were appropriately applied by the court. The trafficking enhancement was based on the fact that these men took 104 firearms and then distributed them around Chicago. We had 19 recovered at crime scenes across the city. That justified that harm, justified that enhancement. The fact that when they broke into this car, they possessed those firearms, that, following this comment, 14b, justified that one. And then the fact that they were stolen firearms justified that enhancement. So we don't think there's any double counting here. Each enhancement was relied on by a different harm that the defendants caused when they broke into these trains, stole 104 guns, and then distributed them throughout the city of Chicago. Mr. Prentick, could you answer my chronology question about the district court? Judge, I'm 99% sure that before we had our first sentence in this case, everybody had fled, but I cannot be positive right now. Okay. Let's double check that. And then, besides all that, as Your Honors alluded to earlier, the district court made clear that regardless of how any of these enhancements worked out, he was going to impose the same sentence. And, in fact, again, he imposed a below-guideline sentence for every one of the defendants. Of course, your opponents point out, yes, the district judge did say that, and to a degree we have said to district judges that if you say that, we will take that into account. But we surely need something more than every district judge just saying at the end of every sentence, and this is my sentence and nothing else would influence me, period, because you would, by that measure, defeat all appellate review, and that doesn't seem to be the scheme Congress has given us. So you need a little bit more than just a pretty boilerplate statement. Agreed, Your Honor. I think what the district court did here in each of these sentences was go far beyond boilerplate. He had a great understanding of this case. He went through nine different sentencings on this case. He understood where everybody fell in the grand scheme of things. He obviously didn't use the guidelines because he went below them in each case, and he put defendants where he thought their relative culpability was, based on 3553. So even when he was giving these enhancements, the government's position is he accepted a lot of the defendants' arguments that there might be maybe not double counting, but the same conduct was being used, and so he adjusted accordingly. Does he ever say that's what he's doing, though? Like, gee, these guns keep coming up with every enhancement I'm looking at under the guidelines, and they shouldn't count for that much. He doesn't say that, Judge, but, I mean, in some of these, he went below the guidelines by, I think, more than 60 months in some of these situations. In some of them, it was a big discount. Others, not so much. And I think a lot of that also depended on Mr. Lewis had the prior for first-degree murder. I mean, I think he looked at the criminal history as well in adjusting, and once he set Mr. Lewis as the 15-year high-end sentence, I think that was the ceiling, and then he adjusted accordingly. It's a first- or second-degree murder. I thought it was second, but anyway, murder in there. In turning, Your Honors, to the argument about the burglary conviction, again, the government's position is the guidelines speak directly to this. We're talking about three convictions that Mr. Shelton had. He had a January 24th burglary conviction, a March 8th burglary conviction, of which he was on probation for both of those when he committed a third burglary conviction. Now, the PSR is clear on this. That third conviction, that was a new conviction within the time window, so that gives him three points, and the guidelines say you then add. Then the PSR is clear that because of that new conviction, he violated probation on both of the prior burglary convictions, and that the court gave a four-year concurrent sentence on each of the probation violations. That's the question. Is the sentence for the violation of probation, or is there really just one sentence for the new burglary? Everybody agrees we count the new burglary, but how do we count the old ones? In the PSR, it's clear. Isn't there one that's just for 29 days? Correct, and so the guidelines say you add the four-year term. We know that it's being imposed for that offense, but how clear is the record on that? If you look at paragraphs 51 and 52 of the defendant's PSR, it's clear. It says that for this violation, a sentence of four years was imposed to run concurrent in this case number, in the prior case number, and in the new burglary. So that's the PSR. Do we have the underlying records? Just probation used the underlying records to write the PSR. There was no objection to that. Right, I understand. Maybe if there was no objection, it's not a problem, but it's looking. I understood Mr. Slaughter to be saying looking at the state records, it's not at all clear that those four years were re-imprisonment for the old violations. Right, and defense counsel never. It wasn't that they brought forward those records. The probation officer looked at the records and then wrote that these sentences were imposed based on that violation, and there was no presentation to say that that's not correct, and so the court accepted it. And once you accept that, I think it sounds like defense counsel agrees that the guidelines would score that as evidence. Oh, yeah, I think once you accept that, this argument's over. So if there's no additional questions the government would ask, the court would affirm the sentences. Did you take a look at the Lewis reply brief? It talked about a study from the Brookings Institution which reviewed some other studies on the value of intense supervision. I was wondering if you had a chance to look at that and offer comments. Is this about the supervised release sentence? Yeah. Judge, on this argument turning to theóI'm not familiar with this study or prepared to comment on it, but on the actual issue,  why he gave the term of three years of supervised release, he said to the defendant, this is for your own benefit. Given your continued committing of criminal conduct throughout your life, this is actually going to help you. But I think what Mr. Hillis is complaining about is he doesn't say, and that's why you need three years, not one. Supervised release, the judge clearly thought would be beneficial for Mr. Lewis, but why that long? That's correct, Judge. The court did say, given the seriousness of this offense and the long, unabated history of criminal conduct by Mr. Lewis, a period of supervised release is certainly appropriate, and I will sentence him to a term of three years. That's his explanation coupled with all of theó That's kind of a statement rather than an explanation, wouldn't you say? Well, it's kind of to the defendant. He's saying, given the seriousness of this offense and the long, unabated history of the defendant's criminal history, I think that this term of three years is appropriate. But then he goes on to say that this isn't intended to be punishment, this is intended to help you. No, I know. It's just a little speech about that. And againó If I remember correctly, in the judge's explanation as to whether he would have given the same sentence, regardless of guideline determinations for Mr. Walker, Mr. Walker argues that the judge actually misstated the applicable guideline range that he had calculated or the alternative calculations. Do you recall that? Just now, you mean? It's in the brief. Mr. Walker's brief at page 11. It's right at the bottom. That soliloquy contains an error. That he would have given himó So he's levels off level 34, yields 28. That's hard to argue. So apparently, yes, he misspoke. Again, I guess our argument would be that there was no error here anyway, so it wouldn't matter. I'm a little disturbed that you didn't look up the reference. It's on page 13 of the Lewis reply brief to the Brookings study. It's just a URL. And, Judge, I have not looked at it recently. I can't recall if I looked at it. I mean, I thought you said you just didn't look at it. And if it's in the reply brief, then it makes me wonder what else you didn't look at. But if you didn't, you didn't. All right. Thank you, Your Honor. All right. Thank you. You were close to out of time, Mr. Hills, but I will give you a little bit to aboutó Thank you, Your Honor. Your Honor, I'll begin with something that we noted in the reply brief for Mr. Lewis at page 10. The average period of supervision in the Northern District for a supervised release for a felon in possession is 33.16 months. It seems, though, we do not have an individuated approach to supervised release that's consistent with Gaul and the imposition of sentence if everybody pretty much gets the statutory maximum period of supervision on this type of offense. That's a concern. And I don't know that the Northern District is unique to the Central or the Southern District, based on my experience. But that's for a different day. Giswine, Black, Painter, Macieló those are all cases that have talked about this sort of last-minute interjection by the district judge. Of course, I'd have given them the same sentence. Black remanded despite the judge saying that. And we should be very concerned that we are allowing that, given what we know about the anchoring effect and implicit bias and the fact that the guidelines carry great weight, and judges, for them, after they are steeped in guideline cases and so forth, to be able to nail down an appeal and say, I was unaffected, clearly, especially in a case where the judge may have misstated something about the guidelines, as in perhaps Mr. Walker, if the judge makes a misstatement. How do you credit the judge and accept that if the judge is to make a mistake and say, it's immaterial, it didn't affect me? If the judge doesn't know he made the mistake, I don't think you can credit that explanation. And I don't think you can credit that explanation. Mr. Hillis, considering the backgrounds of these defendants, if you're right that this approach is the max that is regularly given, you would say this is not an appropriate case to follow that? I'm not saying that, Judge. What I'm saying is that the procedure is improper, that we should have, in all cases, a procedure that makes an individual determination. For what it's worth, the probation office recommended two years. The judge gave three. But it seems to be the consistent practice of judges in the Northern District. That's the part I'm mostly concerned about. So you would concede that he could have come up with three years if he had followed a procedural path that you thought was more appropriate? Sure. I mean, the procedure is there. The judge just needs to nail down what has to be said. For that matter, if the statutory range is zero to 20 years, if a judge says enough to convince this court that 20 years is correct, what gets them there is that he followed the necessary procedure in order to arrive at that conclusion, gave an adequate explanation. Those are the things that we're concerned about. Would you require a district judge to say, I'm giving this term of supervised release because I've given a lesser custodial sentence than I would have otherwise? There's interplay. This court's noted that. It's all part of the sentence. But given the distinct differences for the rationale for imprisonment versus supervision, that I think would be a problem if we were just to accept. Yeah, but this is a case where we have less than maximum sentences. Right. I mean, so it does suggest that there might have been consideration by a district judge. That's all very true. Before I forget, the very last point that I wanted to make is, in the briefing that was done by my colleague, Molly Armour, her brief noted about the history of application note 14 for the imposition of the burglary enhancement. It is because of the special concern that by being able to pick up a gun and use it, that you increase the potential harm. That is explicit, if not implicit. The worry is about picking up a loaded gun and doing something with it, not about stealing unloaded and crated weapons. So that just doesn't really make it into the judge's analysis, which then Judge Hamilton takes me back to why we would ever want to get back and have a chance at resentencing. We would like judges to consider things like the Brookings Institute report about the length of supervision. So if they had taken stolen guns that were loaded, you think that's a difference? Yes. So if they opened the crate within minutes and put ammunition, the possibility of that occurring, obviously. Sure. You would say that's a distinction? It is. Because that's what the commission, I think, Judge, in its history that is recounted in the brief, talks about why the enhancement was put there. That was the specific concern about a burglary, you find a weapon, and now the cause of potential harm is greater. And that's just missing when you've got crated unloaded weapons. Thank you. All right. Thank you very much, Mr. Hillis. Thanks to all counsel for the defendants. Thanks as well to the government. We will take the case under advisement. Thank you.